UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Joseph Barton,
 Plaintiff

 v.                                Case No. 17-cv-547-SM
                                   Opinion No. 2018 DNH 125
Peter Favreau,
 Defendant


**O R D E R**


Joseph Barton brings this action against Peter Favreau, an investigator in the Office of the New Hampshire Attorney General, seeking to recover damages for injuries he claims to have sustained when Favreau arrested him.  Specifically, Barton claims Favreau violated his constitutionally protected rights to be free from both unreasonable seizures and excessive force.  See generally 42 U.S.C. § 1983.  Barton also advances state common law claims for assault/battery, false imprisonment, and "negligent administration of justice."  Favreau moves to dismiss all of Barton's claims, asserting that the first three are barred by the rule articulated in Heck v. Humphrey, 512 U.S. 477 (1994).  As for Barton's final claim, Favreau says it fails to state a viable cause of action.

For the reasons discussed, Favreau's motion to dismiss is granted in part, and denied in part.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable

to plausible." Id. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Tambone, 597 F.3d at 442.

**Background**

Accepting the factual allegations of Barton's complaint as true - as the court must at this juncture - the relevant background is as follows.  During the midterm elections in 2014, Barton acted as a "poll challenger" at the Newmarket town hall, having been appointed to that position by the New Hampshire Republican Party.  As he saw it, his job was to ensure compliance with a new state law that required voters to verify their residency by producing identity documents such as a driver's license or residency affidavit.  According to Barton, he witnessed several new voter registrants who did not present appropriate documentation of their residence.  Barton raised an objection with the supervisor of the checklist and the Town Clerk.  In response, the Town Clerk told Barton that she would contact the Attorney General's office to resolve Barton's concerns.

Later, the Town Clerk reported to Barton that she had spoken with a representative of the Attorney General's office who concluded that the procedures being employed at the polling place were consistent with New Hampshire law. Barton remained unsatisfied. Accordingly, the Town Clerk again contacted the Attorney General's office. An investigator, defendant Peter Favreau, was sent to look into the matter. After he arrived, Favreau spoke privately with Barton, in a room above the polling place. Their conversation was calm at first, but became heated (for which each blames the other). It culminated in Favreau arresting Barton for disorderly conduct. And, because Barton did not submit, but struggled with Favreau, he was also charged with simple assault, in violation of N.H. Rev. Stat. Ann. ("RSA") 231-2-A, and resisting arrest, in violation RSA 642:2. Following a bench trial, Barton was acquitted of both disorderly conduct and simple assault, but convicted of resisting arrest.

Barton appealed his conviction to the New Hampshire Supreme Court, which described Barton's interaction with Favreau as follows:

> After the investigator introduced himself to the defendant, the defendant asked the town clerk if he and the investigator could use the town council chambers to discuss the voting laws. The clerk led them upstairs to the council chambers on the third floor and left.

4

The investigator testified that when he and the defendant sat down in the council chambers, he again identified himself, gave the defendant his business card, and put his investigator's badge from the Attorney General's Office on the table. The investigator testified that he and the defendant "had a cordial conversation" initially, but that the defendant became angry because he did not agree with the investigator's position regarding the voting laws. The defendant testified that the investigator became "agitated because I asked him to . . . review the statutes." The defendant testified that he told the investigator that he was "done with the conversation" . . . "put [his] jacket on and proceeded to leave the town council chambers," and that the investigator told him that "if I went back to poll challenging . . . he would have me arrested for disorderly conduct."

The investigator testified that when the defendant questioned his authority to order him not to return to the voting area, he told the defendant that he had such authority "as a police officer." The investigator testified that as the defendant left the room and started walking toward the stairs, he followed him, and "told him again that if he went downstairs, he was going to be arrested." . . . .

The investigator testified that, when the defendant ignored his order not to return to the voting area and continued walking down the stairs, he "grabbed onto [the defendant's] jacket." The defendant "immediately turned, tried to knock [the investigator's] hand away with his hand," and said "keep your hands off me." The investigator then "grabbed [the defendant] with both hands on his jacket" and pushed him outside through a stairwell door. The investigator further testified that, "I told him twice while we were outside, once as we were standing against the building wrestling toward the ground, and once on the ground[,] that he was under arrest." The investigator testified, "I know when somebody's fighting back," and that the defendant "was clearly fighting back." The investigator testified that, once the defendant was on the ground, he tucked his hands under his body to prevent the investigator from being able to handcuff him.

5

> Officer Jordan of the Newmarket Police Department, who was off duty and not in uniform, tried to help the investigator restrain the defendant by "grabb[ing] ahold of one of [the defendant's] arms" and "straddling his legs." Chief Walsh of the Rye Police Department, who was also off duty, testified that he heard the investigator tell the defendant that he was under arrest. Walsh testified that he arrived after Jordan and tried to get the defendant to calm down, but that it took several attempts before the defendant complied. Officer Stevens of the Newmarket Police Department, who was on duty and in uniform, arrived after Walsh and was able to handcuff the defendant. Jordan testified that it took all four officers to subdue the defendant sufficiently to be able to place the handcuffs on him.

State v. Barton, No. 2017-0321 (April 10, 2018) (document no. 13-1) (citations omitted). The New Hampshire Supreme Court affirmed Barton's conviction for resisting arrest.

According to Barton, there are a few details missing from the Supreme Court's recitation of the facts. His complaint alleges that after Favreau grabbed him by the collar on the stairwell landing, he "ran Barton through the exit door - which was about six or eight feet away - down two concrete steps, and into the parking lot, breaking Barton's ribs." Complaint (document no. 1) at para. 42. Next, says Barton, Favreau "put [him] up against a brick wall and punched him in the face, knocking him to the ground." Id. at para. 43. Barton claims he "assumed the fetal position and called for help as Favreau

6

wantonly kicked and punched him about the body." Id. at para. 44.

**Discussion**

**I. Counts One through Three**

Citing the rule articulated in Heck v. Humphrey, 512 U.S. 477 (1994), Favreau says Barton's conviction for resisting arrest precludes him from pursuing his constitutional claims of unlawful arrest and excessive force (count one), as well as his related common law claims of assault/battery (count two) and false imprisonment (count three). In Heck v. Humphrey, the Supreme Court held that a plaintiff cannot pursue a section 1983 civil action if a judgment in his or her favor would "necessarily imply the invalidity of his conviction or sentence." Id. at 487. Consequently, "the district court must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by 'negating an element of the offense of which he was convicted.'" Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006).

It is, then, probably appropriate to note the precise language of the statute under which Barton was convicted. RSA 642:2 provides, in pertinent part, that "A person is guilty of a misdemeanor when the person knowingly or purposely physically

7

interferes with a person recognized to be a law enforcement official, including a probation or parole officer, seeking to effect an arrest or detention of the person or another <u>regardless of whether there is a legal basis for the arrest</u>." (emphasis supplied).

At his juncture - accepting the factual allegations in Barton's complaint as true - the court cannot conclude as a matter of law, that his section 1983 unlawful arrest and excessive force claims are barred by <u>Heck v. Humphrey</u>. As the court of appeals has noted, "A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction and so is not barred by <u>Heck</u>. Even the fact that defendant was convicted of <u>assault</u> on a police officer does not, under <u>Heck</u>, as a matter of law *necessarily* bar a § 1983 claim of excessive force." <u>Thore</u>, 466 F.3d at 180 (citations omitted) (emphasis in original).

As for Barton's Fourth Amendment claim that he was unlawfully arrested, it is unclear on this record precisely when (or why) he was placed under arrest. Based upon the allegations of the complaint, it appears that Favreau sought to arrest

Barton (and prevented him from proceeding in the direction he had planned) when he grabbed Barton by the collar and forcibly ran him out the doorway. That Barton was convicted of <u>subsequently</u> resisting arrest - an arrest which, under New Hampshire law, could have been entirely unjustified and unlawful - says nothing about whether Favreau's <u>initial</u> <u>decision</u> to arrest Barton in the stairwell was consistent with constitutional requirements (i.e., supported by probable cause to believe that Barton was engaged in, or about to engage in, criminal activity). Viewed slightly differently, Barton could not have resisted arrest until <u>after</u> Favreau tried to arrest him. And, it would not appear that Barton would have to undermine his conviction for resisting arrest or call into question any of the essential elements of that crime in order to demonstrate that Favreau's initial decision to arrest him was unconstitutional. It is possible, for example, that Barton (unlawfully) resisted an entirely unconstitutional arrest, during which he was subjected to excessive force.

Here, as in <u>Thore</u>, the factual record is insufficiently developed to determine whether <u>Heck</u> operates to bar the plaintiff's constitutional claims. See <u>Thore</u>, 466 F.3d at 180 ("While we conclude that <u>Heck</u> does not automatically bar consideration of an excessive force claim by an individual who

has been convicted of assault, the record before us does not permit a determination of the requisite relatedness."). In short, the bare fact that Barton was convicted of resisting arrest says nothing about whether the decision to arrest him was supported by probable cause (since, under RSA 642:2, one can unlawfully resist even an unconstitutional arrest), nor does Barton's conviction resolve whether the force used to effectuate his arrest was reasonable. See, e.g., VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006).

Similarly, Barton's conviction for resisting arrest would not seem to preclude him from advancing his common law claims of assault/battery and false arrest. Because RSA 642:2 specifically provides that one can be convicted of resisting even an unlawful arrest, and because the record does not appear to contain any reference to a judicial determination that Favreau had probable cause to arrest Barton for disorderly conduct (indeed, Favreau was acquitted of that charge), it would not appear that Heck v. Humphrey bars Barton's false arrest claim. See generally Ojo v. Lorenzo, 164 N.H. 717, 726-27 (2013) (describing the elements of a claim for false arrest/false imprisonment). Nor, for the reasons discussed above, would it appear that Heck v. Humphrey bars Barton's claim for assault/battery.

## II. Count Four

Finally, Favreau moves to dismiss Barton's common law claim of "negligent administration of justice," asserting that it fails to state a cognizable cause of action. The court agrees. Barton has not identified a single New Hampshire judicial decision that even discusses such a cause of action, nor one that recognizes that law enforcement officers can be sued for negligently breaching their "duty to administer justice and law enforcement pursuant to Federal and State law." Complaint at para. 75. See generally Farrelly v. City of Concord, 168 N.H. 430 (2015); Everitt v. Gen. Elec. Co., 156 N.H. 202 (2007).

## Conclusion

Barton does not collaterally attack his conviction for resisting arrest, nor does he deny that he resisted Favreau's efforts to take him into custody. Instead, he claims Favreau's initial decision to effectuate that arrest was unsupported by probable cause and that, prior to any resistance on Barton's part, Favreau used unreasonable force against him (i.e., forcibly rushing Barton out the door, breaking his ribs in the process, and then punching him in the face). Again, accepting the allegations of Barton's complaint as true, the court cannot conclude that, as a matter of law, Barton's various claims

arising out of Favreau's decision to arrest him and Favreau's subsequent use of force are barred by Heck v. Humphrey.

For the foregoing reasons, Favreau's motion to dismiss (document no. 15) is granted in part and denied in part. It is granted to the extent that count four of plaintiff's complaint ("Negligent Administration of Justice") is dismissed for failure to state a viable cause of action under New Hampshire law. In all other respects, however, Favreau's motion it is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 20, 2018

cc: Jared J. Bedrick, Esq.
    Heather D. Neville, Esq.
    Matthew T. Broadhead, Esq.